UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
COMMUNITY CARE COMPANIONS, INC.,

                Plaintiff,

           - against -

INTERIM HEALTHCARE, INC.,

                Defendant.
-------------------------------------------------------x

**MEMORANDUM & ORDER**
19-CV-4870 (PKC) (LGD)

PAMELA K. CHEN, United States District Judge:

On August 26, 2019, Plaintiff Community Care Companions, Inc. ("Plaintiff" or "Community Care") brought this action against Defendant Interim Healthcare, Inc. ("Defendant" or "Interim") for, *inter alia*, alleged violations of the New York Franchise Sales Act, New York State Public Health Law, breach of contract, and breach of fiduciary duty. (Compl., Dkt. 1.) On March 5, 2021, Defendant filed its Counterclaims and Third-Party Complaint ("TPC") against Community Care as well as Community Care's President Alexander Caro ("Caro") and Vice President Mark Gatien ("Gatien") (together "Third-Party Defendants"). (TPC, Dkt. 40.) On March 27, 2025, this Court issued a Memorandum & Order ("Summary Judgment Order") granting in part and denying in part Defendant's motion for summary judgment on Plaintiff's surviving claims from its Second Amended Complaint ("SAC"), as well as on three claims in Defendant's TPC. (Summ. J. Order, Dkt. 119.)

Before the Court are motions for reconsideration with respect to the Summary Judgment Order by Plaintiff and Third-Party Defendants Caro and Gatien (collectively, "Plaintiff-Movants") and Defendant. (*See* Pls.' Mot. Recons., Dkt. 120; Def.'s Mot. Recons., Dkt. 121.) Specifically, Plaintiff-Movants seek reconsideration of the Court's holding that it was procedurally improper for Plaintiff-Movants to argue—for the first time at the summary judgment stage—that Defendant

made material misrepresentations related to the timeline for acquiring licensed home care services agency licenses ("LHCSA licenses"), in violation of New York General Business Law Section 687 (i.e., Count III of Plaintiff's SAC). Separately, Defendant seeks reconsideration of the Court's denial of summary judgment on Plaintiff's alleged breach of the royalties provision contained in Section 11 of the Franchise Agreements as well as Sections 2 and 3 of the Addendum (i.e., Count I of Defendant's Counterclaim/TPC). For the reasons set forth below, both Plaintiff-Movants' and Defendant's motions for reconsideration are denied.

## BACKGROUND

### I. Relevant Factual Background

The Court assumes the parties' familiarity with the factual and procedural background of this case, which was thoroughly detailed in the Summary Judgment Order, and recites only relevant facts in this decision. (*See* Summ. J. Order, Dkt. 119, at 2–14.) Interim is a franchisor of medical staffing services, non-medical support services, companion care services, and healthcare-related home medical products. (*Id.* at 2.) Community Care is a New York corporation that provides home health care services. (Pls.' 56.1 Resp., Dkt. 111-72, ¶ 3.)

In July 2017, Community Care began exploring the possibility of purchasing seven of Interim's franchises that were previously owned and operated by James Watson (the "Watson Franchises"). (Summ. J. Order, Dkt. 119, at 2–3.) Following a period of time where Interim disclosed various financial documents to Community Care, on October 13, 2017, Plaintiff and the Watson Franchises entered into an "Agreement for Purchase and Sale" ("PSA") of the Watson Franchise locations. (*Id.* at 8.) On October 14, 2017, the Watson Franchises and Community Care entered into a "Management Services Agreement," which gave Plaintiff the "operating and management authority over the [Watson Franchises]." (*Id.* at 9.) That same day, Plaintiff and Defendant entered into seven separate but identical franchise agreements ("Franchise

2

Agreements") as well as an "Addendum," the latter of which provided for royalty relief, rebranding, and a line of credit.[1] (*Id.*; *see also*, Franchise Agreements, Dkt. 110-5; Addendum, Dkt. 110-32.) Separate from the written agreements, the parties entered into an oral agreement, pursuant to which Interim agreed to hire a lobbyist and consultant called Pinnacle Health Consultants, LLC ("Pinnacle") to obtain LHCSA licenses on behalf of Community Care. (Summ. J. Order, Dkt. 119, at 10, 44 (finding that "there is no genuine dispute regarding whether an oral agreement existed between the parties, pursuant to which Interim agreed to obtain or transfer the necessary LHCSA licenses for Plaintiff").)

As laid out in the Court's Summary Judgment Order, the following claims survived Defendant's summary judgment motion: (1) Plaintiff's claims for violation of New York General Business Law Section 687 on the ground that Defendant's financial disclosures to Plaintiff constituted misrepresentations of material fact and induced Plaintiff to enter into the PSA and the Franchise Agreements; (2) Plaintiff's claims for breach of contract as to the rebranding provision in Section 5 of the Addendum; (3) Defendant's breach of contract counterclaims related to the royalties, re-branding, and non-compete provisions in the Franchise Agreements and the Addendum; and (4) Defendant's breach of good faith counterclaim. (*Id.* at 33, 40–42, 57.)

## II.   Procedural History

Plaintiff-Movants timely filed their motion for reconsideration on April 10, 2025. (Pls.' Mot. Recons., Dkt. 120.) Defendant filed its opposition to Plaintiff-Movants' reconsideration motion on April 24, 2025. (Def.'s Opp'n Recons., Dkt. 124.) Plaintiff-Movants filed their reply

---

[1] Royalty relief refers to the provision in the Addendum stating, *inter alia*, that Community Care would not be required to pay royalties for the first year of operation. (Addendum, Dkt. 110-32, at 2.). Rebranding refers to rebranding Community Care's pre-existing businesses as Interim facilities. (*Id.* at 4.)

3

on May 1, 2025. (Pls.' Reply Recons., Dkt. 125.) Separately, Defendant timely filed its motion for reconsideration on April 10, 2025. (Def.'s Mot. Recons., Dkt. 121.) Plaintiff-Movants filed their opposition on May 5, 2025. (Pls.' Opp'n Recons., Dkt. 126.) Defendant filed its reply on May 12, 2025. (Def.'s Reply Recons., Dkt. 127.) The two motions for reconsideration were therefore fully briefed by May 12, 2025.

## LEGAL STANDARD

Reconsideration is an "extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." *Butto v. Collecto Inc.*, 845 F. Supp. 2d 491, 494 (E.D.N.Y. 2012) (citation omitted). "The standard for granting such a motion is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Cho v. Blackberry Ltd.*, 991 F.3d 155, 170 (2d Cir. 2021) (citation omitted). "[A] party may move for reconsideration and obtain relief only when the [party] identifies an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Id.* (citation omitted). "The manifest injustice standard is, by definition, deferential to district courts and provides relief only in the proverbial rare case." *Corsair Special Situations Fund, L.P. v. Nat'l Res.*, 595 F. App'x 40, 44 (2d Cir. 2014) (summary order) (cleaned up) (citation omitted).

A motion for reconsideration "is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple.'" *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012), *as amended* (July 13, 2012) (citation omitted). Furthermore, arguments raised for the first time on reconsideration are not proper grounds for reconsideration. *See Image Processing Techs., LLC v. Canon Inc.*, No. 10-CV-3867 (SJF) (ETB), 2012 WL 253097, at *1 (E.D.N.Y. Jan. 26, 2012) ("[A]

4

party is not permitted to 'advance new facts, issues[,] or arguments not previously presented to the Court' on a motion for reconsideration." (citing *Caribbean Trading & Fid. Corp. v. Nigerian Nat'l Petroleum Corp.*, 948 F.2d 111, 115 (2d Cir. 1991))).

## DISCUSSION

### I.  Plaintiff-Movants' Motion for Reconsideration

Plaintiff-Movants seek reconsideration of the Court's dismissal of their argument that Interim materially misrepresented the timing and feasibility of obtaining the LHCSA licenses for Community Care ("the licensing fraud allegations"), in violation of New York General Business Law Section 687 ("Section 687"), alleged under Count III of the SAC.  (Pls.' Mem. Recons., Dkt. 120-1, at 1.)  For the reasons stated below, Plaintiff-Movants' motion for reconsideration is denied.

#### A.  Relevant Background

Count III of the SAC states a claim for violation of Section 687, which makes it "unlawful for a person, in connection with the offer, sale or purchase of any franchise, to directly or indirectly: . . . [m]ake any untrue statement of a material fact or omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading." N.Y. Gen. Bus. Law § 687(2)(b).  Under Count III, Plaintiff alleges that Defendant engaged in "false and misleading," "knowing," and "willful" conduct, including through Defendant's "Misrepresentations," "Omissions," and "Financial Performance Representations."  (SAC, Dkt. 29, ¶¶ 128–35.)  Importantly, these three terms—"Misrepresentations," "Omissions," and "Financial Performance Representations"—are defined terms within the SAC.  In other words, the three terms refer to *specific* conduct by Defendant, none of which includes the licensing fraud allegations.  The term "Misrepresentations" refers to

5

Defendant's disclosures of the Blacktree Assessments, the Marcum Audit, and the Profit and Loss statements.  (*Id.* ¶¶ 12, 66.)  The term "Financial Performance Representations" refers to Defendant's alleged misrepresentations about Community Care's expected earnings from acquiring the Watson Franchises.  (*Id.* ¶¶ 51–54.)  Lastly, the term "Omissions" refers to allegations about Defendant's failure to disclose the extent of Watson's debts and the investigation conducted by the New York Attorney General into the Watson Franchises.  (*Id.* ¶¶ 69–76.)

Each sentence under Count III that lays out the basis for the Section 687 claim does so by specifically referencing Defendant's "Misrepresentations," "Omissions," and "Financial Performance Representations."  (*Id.* ¶¶ 130–34.)  For example, Plaintiff alleges, *inter alia*, that "[t]he Misrepresentations, Omissions, and Financial Performance Representations induced [Community Care] to enter into the [Purchase and Sale Agreement] and the Franchise Agreements."  (*Id.* ¶ 132.)  Plaintiff further alleges that "[Plaintiff] reasonably and justifiably relied on the Misrepresentations, Omissions, and Financial Performance Representations, which were material to [Plaintiff's] investment decision."  (*Id.* ¶ 133.)  Nowhere in Count III does Plaintiff make any explicit mention of the licensing fraud allegations.[2]

Moreover, Plaintiff did not advance this theory of licensing fraud in any of its pleadings in this six-year-long litigation.  Plaintiff amended its initial complaint two times but did not amend Count III to include the licensing fraud allegations.  (*See* SAC, Dkt. 29.)  Nor did Plaintiff argue licensing fraud in opposition to Defendant's motion to dismiss Count III.  (Pl.'s Mem. L. Opp'n

---

[2] This is in notable contrast to Plaintiff's pleadings under Count VII of the SAC for breach of fiduciary duty and breach of contract, where facts related to "licenses" and "licensing" are explicitly mentioned.  (*See, e.g.*, SAC, Dkt. 29, ¶ 168 ("[Interim] breached the Franchise Agreements by, among other things, utterly failing at every opportunity to take commercially reasonable efforts in carrying out its obligation to obtain or transfer the licenses and otherwise advertising to perform without the necessary licensing.").)

6

Mot. Dismiss, Dkt. 36-7, at 14–16.)  On summary judgment, when Plaintiff-Movants raised this theory of licensing fraud for the first time in their opposition brief, Interim asserted that, "Community Care's new theory of fraud [regarding the misrepresentation of licenses]–which must be plead [sic] with particularity–does not appear in the SAC."  (Def.'s Reply Supp. Mot. Summ. J. ("Def.'s Reply MSJ"), Dkt. 115, at 4.)  Based on this assertion, and based on the observation that Count III of the SAC does not contain a single explicit reference to the licensing fraud allegations, the Court dismissed Plaintiff-Movants' licensing fraud theory as being improperly before the Court.  The Court stated:

> Though not mentioned anywhere in the SAC, Plaintiff[-Movants] . . . stat[e] that "Interim completely misrepresented to Community Care what it believed about Pinnacle's ability to deliver on licenses and how long it would take." (Pl.'s MSJ Opp'n, Dkt. 111-71, at 20–21 (cleaned up).)  The Court agrees with Defendant that this theory of fraud—appearing for the first time in the opposition brief—is not properly in the case or before the Court and should therefore not be considered in ruling on Defendant's summary judgment motion. *See Guardian News, Inc. v. Idoni*, No. 08-CV-10064 (CS), 2011 WL 13383231, at *8 (S.D.N.Y. June 20, 2011) (observing that "in resolving a motion for summary judgment, the [c]ourt should not consider new factual allegations and legal theories not raised in the complaint").

(Summ. J. Order, Dkt. 119, at 32 n.26.)[3]

Plaintiff-Movants now argue that the licensing fraud allegations were in fact sufficiently pled in the SAC because the first sentence under Count III says, "Plaintiff repeats and realleges each of the foregoing allegations as though fully set forth herein."  (SAC, Dkt. 29, ¶ 128).  Plaintiff-Movants argue that pursuant to Federal Rule of Civil Procedure ("Rule") 10(c)[4], this

---

[3] As noted *supra*, the Court nevertheless allowed the Section 687 claim to survive summary judgment on the ground that Defendant's financial disclosures to Plaintiff constituted misrepresentations of material fact and induced Plaintiff to enter into the PSA and the Franchise Agreements.

[4] Under Rule 10(c), "[a] statement in a pleading may be adopted by reference elsewhere in the same pleading."  Fed. R. Civ. P. 10(c); *see also Digilytic Int'l FZE v. Alchemy Fin., Inc.*, No. 20-CV-4650 (ER), 2022 WL 912965, at *5 (S.D.N.Y. Mar. 29, 2022) ("[T]he incorporation

7

sentence of the SAC adopts by reference into Count III those licensing fraud allegations that appeared earlier in the SAC.  Plaintiff-Movants also state in a footnote that, "[t]he Court's misunderstanding may have been due to the fact that Interim (misleadingly and incorrectly) asserted that the licensing fraud allegations '[do] not appear in the SAC.'" (Pls.' Mem. Recons., Dkt. 120-1, at 2 n.2.)

B. Analysis

"It is well-settled that a court is not required to consider new theories of liability raised for the first time in opposition to summary judgment." *Russo v. Keough's Turn of the River Hardware, LLC*, No. 11-CV-0994 (VB), 2012 WL 4466626, at *6 (S.D.N.Y. Sept. 25, 2012), *aff'd*, 529 F. App'x 50 (2d Cir. 2013) (summary order).  This is typically the case where the allegations at issue do not appear in the operative complaint at all.  *See, e.g.*, *Greenidge v. Allstate Ins. Co.,* 446 F.3d 356, 361 (2d Cir. 2006) (declining to reach the merits of an argument raised "for the first time" in opposition to summary judgment when the complaint did not make any reference to those claims). In situations where the relevant factual allegations do appear in the operative complaint but are not stated clearly under a specific claim, the Court may still consider later "variations of" those claims on summary judgment based on weighing certain factors, such as notice and unfair prejudice to the defendant. *See Design Partners, Inc. v. Five Star Elec. Corp.*, No. 12-CV-2949 (PKC) (VMS), 2017 WL 818364, at *17 (E.D.N.Y. Mar. 1, 2017) ("[I]n contrast to claims that are 'entirely new,' claims . . . 'based on the same nucleus of operative facts and similar legal theories as the original claims . . . may be raised on a motion for summary judgment where the defendant was clearly on notice from the complaint and was not unfairly prejudiced.'" (quoting *Henry v. Metro. Transp.*

---

of preceding paragraphs into subsequent causes of action is a standard practice, specifically permitted by Rule 10(c).").

8

*Auth.*, No. 07-CV-3561 (DAB), 2014 WL 4783014, at *10 (S.D.N.Y. Sept. 25, 2014))). Moreover, it is not necessary for a plaintiff to spell out every legal theory it purports to bring under a certain cause of action when drafting its complaint. *See Sucesores de Don Carlos Nunez y Dona Pura Galvez, Inc. v. Societe Generale, S.A.*, 577 F. Supp. 3d 295, 305 n.4 (S.D.N.Y. 2021) ("A plaintiff must assert adequate facts in a complaint to support her later legal arguments but need not include every legal assertion in her complaint.").

Here, there is no dispute that the license-related allegations *do* appear in the SAC, though those allegations ostensibly form the basis of Plaintiff's now-dismissed breach of fiduciary duty and breach of contract claim under Count VII of the SAC. (Summ. J. Order, Dkt. 119, at 43–48; SAC, Dkt. 29, ¶¶ 161–70.) The SAC alleges, for example, that "[Interim] represented to [Community Care] that it had the ability to obtain the transfer of the necessary healthcare licenses for [Community Care] in two (2) months." (SAC, Dkt. 29, ¶ 32.) It further alleges that "based on [Interim]'s representation and actions[, Community Care] held off hiring their own consultants to facilitate the license transfer." (*Id.* ¶ 82.) Lastly, it asserts that "[Interim], and its agent, Pinnacle, failed at every opportunity to obtain the licenses as promised. As a result, [Community Care was] unnecessarily delayed by years." (*Id.* ¶ 86.) Based on these allegations as well as the single form sentence "repeat[ing] and realleg[ing] each of the foregoing allegations" into Count III of the SAC, (*see id.* ¶ 128), Plaintiff-Movants assert that it was proper for them to argue the licensing fraud theory in opposition to Defendant's summary judgment motion.

Plaintiff-Movants' arguments are a clear attempt to circumvent good faith pleading standards and modify Plaintiff's theory of fraud at a late stage of the case. Though adoption of prior allegations by reference is allowed by Rule 10(c), such practice may still violate Rule 8(a)(2)'s requirement of "a short and plain statement of the claim showing that the pleader is

9

entitled to relief." Fed. R. Civ. P. 8(a)(2); *see also United States v. Int'l Longshoremen's Ass'n*, 518 F. Supp. 2d 422, 463 n.75 (E.D.N.Y. 2007) ("[T]he practice of simply incorporating factual allegations *en masse* into a claim for relief against numerous defendants has been held to violate Rule 8(a)(2) even where the factual allegations at issue were incorporated from an earlier portion of the complaint."). Though there is only one defendant in this case, the same principle applies. Rule 8 places the burden squarely upon the plaintiff to succinctly state its claim, and it is neither Defendant's nor the Court's duty to "sift through the [c]omplaint and guess which factual allegations support which claims." *Washburn v. Kingsborough Cmty. Coll.*, No. 20-CV-0395 (DLI) (RLM), 2022 WL 843733, at *2 (E.D.N.Y. Mar. 22, 2022) (internal citation omitted). Moreover, Rule 8(a)(2) provides that the short and plain statement must "give the defendant fair notice of what the . . . claim is and *the grounds upon which it rests*." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (emphasis added) (citation omitted). In other words, the practice of adoption by reference cannot be used in such a way that it deprives the adverse party of fair notice of the plaintiff's legal argument. *See Targus Int'l Co. v. Storm Catcher, Inc.,* No. 06-CV-80303, 2006 WL 8433390, at *6 (S.D. Fla. July 31, 2006) ("Although adoption by reference is permitted under the rules, it must be done in a way so that a [d]efendant is put on notice as to exactly what conduct is being alleged."); *cf. SEC v. SeeThruEquity, LLC*, No. 18-CV-10374 (LLS), 2019 WL 1998027, at *4 (S.D.N.Y. Apr. 26, 2019) (finding that adoption by reference under various counts in the same complaint was proper where "defendants have sufficient notice as to which particular alleged actions gave rise to each count"). As previously mentioned, Community Care did not explicitly reference this theory of fraud in any of its pleadings in this six-year-long litigation, did not amend Count III to include the licensing fraud allegations, and did not argue this theory of fraud in response to Defendant's motion to dismiss. (*See* Pls.' Mem. L. Opp'n Mot.

10

Dismiss, Dkt. 36-7, at 14–16.) For these reasons, the Court finds that Plaintiff-Movants have failed to demonstrate that reconsideration is warranted in this case.

## II.     Defendant's Motion for Reconsideration

Defendant seeks reconsideration of the Court's denial of summary judgment on Defendant's first counterclaim/third-party complaint cause of action for breach of the royalties provision contained within Section 11 of the Franchise Agreements, as well as Sections 2 and 3 of the Addendum (the "royalties provisions"). (*See, e.g.*, Buffalo Franchise Agreement, Dkt. 110-5 at ECF 19; Addendum, Dkt. 110-32, at 2.) Most relevant here are Sections 2 and 3 of the Addendum, which state that royalties start accruing "[d]uring the second year [or, twelve-month period] following the Opening Date." (*See* Addendum, Dkt. 110-32, at 2.) The term "Opening Date" is defined by both sections as the earlier of (a) the date on which Community Care commences operations under the relevant Franchise Agreement, or (b) 60 days following the date that Community Care secures the licenses required to operate the Franchise location. (*Id.*) At summary judgment, the Court found that the parties entered into an oral agreement, pursuant to which Interim agreed to hire Pinnacle to obtain LHCSA licenses on behalf of Community Care. (Summ. J. Order, Dkt. 119, at 44.) The Court further held that Community Care obtained the necessary LHCSA licenses on November 20, 2018. (*Id.* at 50.)

In opposing summary judgment, Plaintiff-Movants argued that even if the Court were to find that licenses were issued to Community Care, "when royalties start under the Addendum would [still] present an issue of fact." (Pls.' Resp. Opp. Mot. Summ. J. ("Pls.' MSJ Opp'n"), Dkt. 111-71, at 34.) In support, Community Care relied on an email thread between Gatien (Community Care's Vice President) and Tracy Clark from Interim. (*Id.*) In this email exchange, Gatien discussed the royalties relief provisions in Sections 2 and 3 of the Addendum and stated that "[t]he

11

transfer consists of many components in addition to just the DOH license." (Email dated 9/20/2018, Dkt. 110-75 at ECF 2–3.) Tracy Clark then responded saying, "We [i.e., Interim] are in agreement with you on this. I have confirmed with the board that they have the same conclusion." (*Id.*) Based on this record evidence, the Court construed Plaintiff-Movants as arguing that Gatien's understanding of the "start date" for paying the royalties was a preliminary understanding from "August 2018" and subject to change based on the fact that a full "transfer consist[ed] of many components." (*Id.*; *see also* Pls.' MSJ Opp'n, Dkt. 111-71, at 34 n.7.) Interim had the opportunity to directly respond to this argument in its reply brief on summary judgment, but did not do so. (Def.'s Reply MSJ, Dkt. 115, at 15.)

In the Summary Judgment Order, the Court analyzed Defendant's claim for breach of the royalties provision and held:

> With respect to the royalties provision, Community Care asserts that royalties were not owed, (Pl.'s MSJ Opp'n, Dkt. 111-71 at 34), and the Court concludes that there remains a genuine dispute of fact as to when royalties would have begun to accrue under the terms of the Addendum. The parties agree that the "No Royalty" time period of one year—during which Plaintiff was not required to pay Defendant any royalties—would have begun on or about January 1, 2019, and thus ended in January 2020. (*Id.* ¶ 144.) But in the same email confirming the start date for royalties, Gatien clarified that "the transfer consists of many components in addition to just the DOH license. I will need to acquire my own Medicaid billing numbers and will still be dependent on Mr. Watson . . . until we have these billing numbers." (Email dated 9/20/2018, Dkt. 110-75 at ECF 2–3.) Thus, there remains a material factual dispute as to the start date for royalties, which cannot be resolved on summary judgment.

(Summ. J. Order, Dkt. 119, at 51.)

Interim now seeks reconsideration of the Court's holding, arguing that the email exchange between the parties should be disregarded because general principles of contract interpretation dictate that the Court must only rely on the text of Sections 2 and 3 of the Addendum when determining what the royalty start date should be. (Def.'s Mem. Recons, Dkt. 122, at 4–5.)

12

According to Defendant, because the Court has previously found that Community Care was issued the LHCSA licenses on November 20, 2018, the "Opening Date" was thus 60 days later, on January 19, 2019. (*See* Summ. J. Order, Dkt. 119, at 50; Addendum, Dkt. 110-32, at 2.) Per the terms of the Addendum, the "No Royalty" period thus ended on January 19, 2020. (Addendum, Dkt. 110-32, at 2 (explaining that royalties start accruing "during the second year following the Opening Date") (cleaned up).) Based on this reasoning, Defendant seeks (1) a determination that issuance of Community Care's Medicaid billing numbers has no relevance to the commencement of royalty payments, and (2) a finding that, under the clear terms of the Addendum, the "No Royalty" period ended on January 19, 2020. (Def.'s Mem. Recons, Dkt. 122, at 5.)

As a preliminary matter, Defendant mischaracterizes the Court's summary judgment findings. Nothing in the Court's holding had the effect of making "Community Care's acquisition of Medicaid billing numbers a precondition for their payment of royalties." (Def.'s Mem. Recons., Dkt. 122, at 5.) The Court, instead, found that there existed a material factual *dispute* between the parties on the factors that were relevant for determining the start date for paying royalties, with Gatien mentioning in the email that notwithstanding the text of the Addendum, the full "transfer" of the Watson Franchise—and presumably Community Care's ability to actually pay the royalties—involved "many components," one of which included Community Care's acquisition of its own Medicaid billing numbers. (Summ. J. Order, Dkt. 119, at 51.)

Most importantly, Defendant's arguments are ones that it could have raised, but did not raise, in the summary judgment briefing. (*See* Pls.' Mem. Recons, Dkt. 126, at 4 ("The Interim SJ Reply Memorandum did not mention Sections 2 and 3 of the Addendum to the Franchise Agreements or the Gatien-Clark email exchange in its discussion of Interim's breach of contract claim." (citing Def.'s Reply MSJ, Dkt. 115, at 15–17)).) This is a textbook example of arguments

13

that are disallowed on a motion for reconsideration. Defendant may not now offer rebuttals it failed to advance when given the opportunity. *See Corines v. Am. Physicians Ins. Tr.*, 769 F. Supp. 2d 584, 593–94 (S.D.N.Y. 2011) ("[I]t is not appropriate to use a motion for reconsideration as a vehicle to advance new theories a party failed to articulate in arguing the underlying motion.") For this reason, Defendant's motion for reconsideration is denied.

## CONCLUSION

For the foregoing reasons, both motions for reconsideration are denied. The parties' joint pre-trial order remains due on July 2, 2025. (*See* 4/21/2025 Dkt. Order.)

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: June 6, 2025
      Brooklyn, New York

14